Achchana Ranasinghe (087282014)
Nicholas Conlon (034052013)
BROWN, LLC
111 Town Square Place, Suite 400
Jersey City, NJ 07310
T: (877) 561-0000 | F: (855) 582-5297
ac@jtblawgroup.com | nicholasconlon@jtblawgroup.com
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **NIKITA DEMYANOV**, individually and on behalf of all others similarly situated,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>**UTILITIES ONE, INC.** and **UTILITIES ONE CONSTRUCTION INC.**,<br><br>　　　　Defendants. | Case No.<br><br>COLLECTIVE AND CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

**COLLECTIVE AND CLASS ACTION COMPLAINT**

Plaintiff Nikita Demyanov ("Plaintiff"), whose street and post-office address is 1547 NE Joshua Tree Lane, Issaquah, Washington 98029, individually and on behalf of all others similarly situated, by and through his attorneys at Brown, LLC, brings this Collective and Class Action Complaint against Defendants Utilities One, Inc. and Utilities One Construction Inc. (collectively, "Utilities One" or "Defendants"), whose principal-place-of-business address is 300 W. Somerdale Road, Suite 5E, Voorhees Township, New Jersey 08043, and alleges as follows upon personal knowledge as to himself and his own acts, and upon information and belief as to all other matters:

**INTRODUCTION**

1. Plaintiff brings this collective and class action to recover unpaid wages owed to utility and fiber installation workers under the Fair Labor Standards Act of 1938 ("FLSA") and

1

Washington law. Plaintiff relies on the following statutes: the FLSA, 29 U.S.C. §§ 201 *et seq.*; the Washington Minimum Wage Act ("WMWA"), Wash. Rev. Code §§ 49.46.005 *et seq.*; the Washington Prevailing Wage Act, Wash. Rev. Code ch. 39.12; Washington wage-withholding law, Wash. Rev. Code §§ 49.52.050, .070; and Washington wage-payment law, Wash. Rev. Code §§ 49.48.010, .030. The unpaid compensation includes overtime, minimum wages, straight-time wages, production-based compensation, promised wages, and prevailing wages arising from Defendants' classification, timekeeping, and compensation practices.

2. Defendants operate a nationwide telecommunications and infrastructure-construction business that recruits, assigns, equips, supervises, and pays utility and fiber installation workers for projects throughout the United States.

3. As used throughout this Complaint, "Field Installation Workers" means persons who performed manual utility, telecommunications, cable, or fiber-optic construction, installation, maintenance, or repair work for one or both Defendants, regardless of job title or employment classification.

4. Defendants employ Field Installation Workers, including utility linemen, aerial linemen, fiber linemen, cable installers, general laborers, and workers in substantially similar positions, to install, maintain, and repair telecommunications and fiber-optic infrastructure.

5. Defendants classify or treat these workers as independent contractors, flat-rate workers, production workers, or otherwise ineligible to receive overtime compensation, even though Defendants control the material terms and conditions of their work.

6. Defendants compensate utility and fiber installation workers through day rates, job rates, piece rates, production or footage rates, fixed weekly amounts, payroll deposits, and electronic

transfers without separately calculating and paying the overtime premium required for hours worked over forty in a workweek.

7. Defendants use contracting and payment intermediaries to issue onboarding documents and transmit portions of the compensation Defendants owe for work performed on Utilities One projects, while Defendants retain control over the projects, work requirements, compensation arrangements, and accounting functions.

8. Plaintiff regularly worked approximately fifty hours per week, and at times substantially more, while performing manual utility and fiber work. Defendants paid Plaintiff fixed daily, production, and weekly amounts but never identified or paid a separate overtime premium.

9. Plaintiff brings the FLSA claim on behalf of a nationwide collective, brings the Washington overtime and wage-withholding claims on behalf of a Rule 23 overtime class of Field Installation Workers who performed work in Washington, and brings the prevailing-wage and related wage-withholding claims on behalf of a separate Rule 23 class of Field Installation Workers who performed covered labor on Washington public works projects. Plaintiff also brings an individual claim for breach of his written compensation agreement, a claim for unpaid final wages under Wash. Rev. Code § 49.48.010 on behalf of himself and separated Class Members, and, in the alternative, a minimum-wage claim under Wash. Rev. Code §§ 49.46.020, .090 on behalf of himself and the Washington Overtime Class.

10. Plaintiff seeks relief on behalf of himself and the members of the Nationwide Collective, Washington Overtime Class, and Washington Public Works Class, as applicable. The relief sought includes: unpaid overtime compensation; unpaid straight-time wages for compensable work; understated production compensation; compensation promised under written agreements and regular pay practices; unpaid prevailing wages, usual benefits, and applicable prevailing overtime

premiums; liquidated or exemplary damages; reasonable attorneys' fees and costs; pre-judgment and post-judgment interest; and all other relief authorized by law, without duplicative recovery.

## JURISDICTION AND VENUE

11. This Court has subject-matter jurisdiction over Plaintiff's FLSA claim under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

12. This Court has supplemental jurisdiction over Plaintiff's related Washington claims under 28 U.S.C. § 1367 because those claims arise from the same employment relationship, compensation practices, hours worked, and wage underpayments as the FLSA claim.

13. This Court has general personal jurisdiction over Utilities One, Inc. and Utilities One Construction Inc. because, on information and belief, each maintains its principal place of business and headquarters in Voorhees Township, New Jersey, and is therefore at home in this State. In the alternative, this Court has specific personal jurisdiction over each Defendant because Plaintiff's and the putative Collective and Class Members' claims arise out of and relate to the classification, onboarding, payroll, and compensation practices that each Defendant created, approved, and administered from its New Jersey headquarters.

14. Venue is proper in this District under 28 U.S.C. § 1391(b)(1)–(2), (c)(2) because Defendants reside in this District and a substantial part of the events and omissions giving rise to the claims, including the creation, approval, administration, and maintenance of the challenged classification, onboarding, payroll, and compensation practices, occurred at or through Defendants' New Jersey headquarters.

15. The relevant facts support allocation to the Camden Vicinage because Defendants reside in Voorhees Township, Camden County, and the challenged nationwide employment and compensation practices were administered in substantial part from that location.

16. The WMWA, Wash. Rev. Code ch. 39.12, and Wash. Rev. Code §§ 49.52.050, .070 apply because Plaintiff and the putative members of the Washington Overtime Class and the Washington Public Works Class performed the work at issue in Washington and suffered the alleged wage underpayments there.

## PARTIES

17. Plaintiff Nikita Demyanov resides at 1547 NE Joshua Tree Lane, Issaquah, Washington 98029, in King County, Washington.

18. Plaintiff worked for Defendants from approximately February 2, 2026, through approximately June 2026, as a utility lineman and general laborer performing telecommunications and fiber-optic installation work.

19. Plaintiff performed the work at issue primarily in Ellensburg, Spokane, Centralia, and Selah, Washington.

20. Utilities One, Inc. is an Illinois corporation that maintains its principal place of business at 300 W. Somerdale Road, Suite 5E, Voorhees Township, New Jersey 08043. Utilities One, Inc. operates the nationwide infrastructure business publicly known as "Utilities One" and "Utilities One Group."

21. Utilities One Construction Inc. is, on information and belief, an Illinois corporation and a corporate affiliate of Utilities One, Inc. Utilities One Construction Inc. issued Plaintiff employment and tax documents identifying itself as his employer and identifying a federal employer identification number different from the federal employer identification number associated with Utilities One, Inc.

22. Public records, Plaintiff's employment documents, and Defendants' business practices reflect substantial overlap between the two Utilities One entities, including common business

locations, branding, projects, personnel, operational functions, contracting and payroll practices, and employment policies.

23.  The precise ownership, corporate, and operational relationship between the Utilities One entities is within Defendants' possession and control. To the extent they are separate juridical entities, each jointly employed Plaintiff and the members of the Nationwide Collective, Washington Overtime Class, and Washington Public Works Class and acted directly or indirectly in the interest of the other. Plaintiff pleads their respective employer status and liability in the alternative to the extent permitted by Fed. R. Civ. P. 8(d).

24. At all relevant times, Defendants were "employers," and Plaintiff, the Nationwide Collective Members, the Washington Overtime Class Members, and the Washington Public Works Class Members were employees and, where applicable, laborers, workers, or mechanics within the meaning of the FLSA and applicable Washington law, regardless of any independent-contractor label or Form 1099 tax treatment.

25. Defendants jointly exercised significant control over recruitment, onboarding, classification, assignments, schedules, supervision, work methods, equipment, production measurements, payroll, compensation, and employment records.

### **FACTUAL ALLEGATIONS**[1]

### Defendants' Business and FLSA Coverage

26. Utilities One provides infrastructure services in telecommunications, power utilities, renewable energy, water utilities, wireless, engineering, construction, and technology deployment.

---

[1] The allegations in this Complaint, unless otherwise specified, refer to the time period of three years prior to the filing of this Complaint through the date of final judgment.

27. Utilities One publicly represents that its project managers handle projects nationwide, that it maintains required contractor licenses and registrations in the states where it operates, and that it uses an extensive network of business partners and subcontractors.

28. Utilities One maintains operations and representatives in numerous states, including Washington, and performs telecommunications and infrastructure projects throughout the United States.

29. Defendants use specialty subcontractors and contracting or payment intermediaries, including Whalewave Constructors LLC and Fokin Group LLC, to obtain, deploy, onboard, and compensate field labor for Utilities One projects.

30. Defendants share the common business purpose of furnishing utility and fiber installation labor for telecommunications and infrastructure projects and derive revenue and economic benefit from the work performed by utility and fiber installation workers.

31. On information and belief, at all relevant times, each Defendant individually constituted an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1)(A), with an annual gross volume of sales made or business done exceeding $500,000. Alternatively, Defendants performed related activities through unified operation or common control for a common business purpose and together constituted such an enterprise.

32. Utility and fiber installation workers regularly handle trucks, bucket trucks, trailers, tools, cable, conduit, fiber-optic materials, safety equipment, phones, computers, and other goods and materials that have moved in interstate commerce.

33. Utility and fiber installation workers also use interstate communications, electronic messaging, mapping systems, project data, and telecommunications infrastructure in performing their work.

34. Plaintiff and other Field Installation Workers, as applicable, were individually engaged in commerce or in the production of goods for commerce because they installed or maintained interstate telecommunications infrastructure, traveled between states or project locations, handled materials and equipment that moved in interstate commerce, and used interstate communications and data systems. They were also employed by an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA.

<u>Defendants' Common Control and Use of Intermediaries</u>

35. Defendants obtain labor for Utilities One projects through common or coordinated recruiting, onboarding, contracting, assignment, supervision, and payroll practices.

36. Utilities One, Inc. controlled or supplied the nationwide projects, customers, project-management functions, maps, work specifications, branding, trucks, uniforms, badges, tools, materials, and other instrumentalities used by utility and fiber installation workers.

37. On information and belief, Defendants used Utilities One Construction Inc. employment and compensation documents to identify Field Installation Workers as employees subject to Utilities One supervision and direction. For example, Utilities One Construction Inc. issued Plaintiff a written employment agreement identifying it as his employer, classifying him as a general laborer, and stating an hourly wage of $47.72.

38. On information and belief, Defendants also used Whalewave Constructors LLC, a nonparty contracting intermediary, to issue independent-contractor and Form 1099 documents for

the same Field Installation Work. Those documents required full-time commitments and imposed schedules and work expectations set by or for Utilities One projects, including in Plaintiff's case.

39. On information and belief, Defendants used Fokin Group LLC, a nonparty payment intermediary, to issue or administer direct-deposit payments for work performed on Utilities One projects, including payments to Plaintiff.

40. On information and belief, Defendants coordinated pay statements, direct deposits, and supplemental true-up payments through Utilities One accounting and the nonparty payment intermediary. For example, Plaintiff received Utilities One pay statements, some corresponding deposits identified Fokin Group LLC, and Utilities One transmitted additional true-up payments.

41. Utilities One managers and project personnel assigned work, established project requirements, selected locations, and communicated the maps and tasks that utility and fiber installation workers were required to complete.

42. Personnel associated with the nonparty intermediaries and/or acting on behalf of Defendants participated in operational communications, production measurement, payroll administration, and wage payment for Utilities One projects.

43. Defendants authorized, adopted, and benefited from the contracting and payment arrangements administered through Whalewave Constructors LLC and Fokin Group LLC. Those intermediaries transmitted documents or payments on Defendants' behalf for work that Defendants assigned, controlled, supervised, accepted, and incorporated into their nationwide business.

44. Defendants determined or controlled whether utility and fiber installation workers would be classified as employees or independent contractors and whether their compensation would be treated as hourly, daily, production-based, or fixed weekly pay.

9

45. Defendants maintained, possessed, controlled, and/or had access to worker rosters, onboarding documents, schedules, assignments, production sheets, project maps, communications, pay statements, deposit records, tax records, and other records needed to determine hours worked and wages paid.

46. Defendants' use of contracting and payment intermediaries did not create a separate and independent business relationship between the workers and Defendants. The economic reality was that utility and fiber installation workers depended upon Utilities One's nationwide business for assignments, equipment, supervision, and compensation.

<u>Employee Status of Utility and Fiber Installation Workers</u>

47. Utility and fiber installation workers perform manual labor that is integral to Defendants' telecommunications and infrastructure-construction business.

48. Defendants determine the projects, customers, locations, schedules, production expectations, work methods, safety requirements, and daily assignments applicable to utility and fiber installation workers.

49. Defendants provide or control the vehicles, bucket trucks, trailers, tools, materials, uniforms, badges, project maps, housing, training, and insurance needed to perform the work.

50. Utility and fiber installation workers do not negotiate project prices, select customers, advertise independent services, submit invoices for independently priced work, or maintain independent customer relationships while performing Defendants' projects.

51. Utility and fiber installation workers cannot meaningfully increase profit through independent managerial skill because Defendants set the compensation structure, determine production values, control assignments, and retain the project proceeds.

52. Utility and fiber installation workers make no substantial capital investment in the business and use Defendants' vehicles, equipment, materials, housing, systems, and project infrastructure.

53. Defendants require utility and fiber installation workers to devote their working time to Defendants' projects and limit their practical ability to perform competing work.

54. The work relationship is continuing and indefinite rather than a discrete, independently negotiated project undertaken by a separate business.

55. The primary duties of utility and fiber installation workers consist of manual field-installation work rather than management of Defendants' business. These workers generally lack authority to hire, fire, discipline, set compensation, establish policy, or make personnel recommendations carrying particular weight.

56. Although Field Installation Workers acquired experience and technical skills, they applied those skills within Defendants' prescribed projects, specifications, schedules, production requirements, and work methods rather than through independent business initiative.

57. The economic reality of the relationship establishes that utility and fiber installation workers are employees under the FLSA and Washington law notwithstanding Defendants' independent-contractor labels, Form 1099 treatment, or use of intermediary entities.

<u>Standardized Classification and Compensation Practices</u>

58. Defendants use standardized or substantially similar field positions, including utility lineman, aerial lineman, fiber lineman, cable installer, general laborer, and other substantially similar utility, telecommunications, or fiber-optic field-installation titles on projects in multiple states.

59. Field Installation Workers perform the same or substantially similar core duties, including loading materials, operating or assisting with equipment, working on utility poles, installing aerial or underground cable and conduit, placing and splicing fiber, digging or backfilling, establishing traffic control, testing installations, documenting completed work, and performing related field tasks.

60. Defendants use a common workday structure under which Field Installation Workers report to yards or company housing, receive daily assignments, load vehicles and materials, travel to assigned locations, complete field work, return vehicles and equipment, and perform reports or follow-up tasks.

61. Defendants commonly schedule Field Installation Workers for five to seven days per week and require work from morning through sunset or later, causing workers to exceed forty hours in many workweeks.

62. Defendants compensate Field Installation Workers through day rates commonly ranging from approximately $150 to $250, job rates, piece rates, production or footage rates, and fixed weekly amounts.

63. The standard daily rate for many workers known to Plaintiff was approximately $200, with some workers receiving less and some workers receiving approximately $250 after Defendants deemed them experienced or productive.

64. Defendants use common or substantially similar employment, independent-contractor, Form W-2, Form 1099, payroll, and compensation documents for Field Installation Workers, including inconsistent employee and independent-contractor documents for the same work.

65. Defendants transmit compensation through common combinations of pay statements, direct deposits, electronic transfers, supplemental payments, and payments administered through intermediaries.

66. Defendants' compensation records identify days worked or production units but do not accurately record all daily and weekly hours and do not identify a separately calculated overtime premium for hours over forty.

67. Defendants treat day-rate, job-rate, piece-rate, production-rate, footage-rate, and fixed-weekly payments as straight-time compensation rather than calculating the regular rate and paying the required overtime premium.

68. Plaintiff discussed compensation with numerous Field Installation Workers and compared compensation information and pay statements with coworkers, confirming that they were paid under the same or substantially similar compensation structures without a separately identified overtime premium.

69. Based on his observations, communications with coworkers, and knowledge of multiple crews in Washington, Oregon, Idaho, Montana, and other states, Plaintiff estimates that Defendants employed more than one hundred Field Installation Workers under the same or substantially similar classification, scheduling, payroll, and overtime practices during the relevant period.

Common Hours and Compensation Practices

70. Plaintiff worked for Defendants from approximately February 2, 2026, through approximately June 2026, in Washington as a utility lineman and general laborer and performed the same core manual duties as other Field Installation Workers.

71. Plaintiff and other Field Installation Workers followed the common workday structure described above, including reporting to a yard or company housing, loading materials and equipment, traveling to assigned projects, performing field work until sunset or later, and completing required reporting and administrative tasks after field operations ended.

72. Plaintiff regularly worked approximately fifty hours per week and more than forty hours during nearly every workweek. Based on his observations and discussions with coworkers, other Field Installation Workers also commonly worked more than forty hours under the same scheduling and assignment practices.

73. Defendants paid Plaintiff through the same types of nonhourly compensation used for other Field Installation Workers. Plaintiff initially received approximately $200 per day, later approximately $250 per day, together with an additional payment intended to bring his weekly compensation to approximately $2,000.

74. A nonparty payment intermediary ordinarily transmitted the daily-rate portion of Plaintiff's compensation, while Utilities One transmitted supplemental payments and issued or transmitted pay statements. On information and belief, Defendants used the same or substantially similar payment structure for other Field Installation Workers.

75. Beginning approximately May 11, 2026, Defendants calculated Plaintiff's compensation from production sheets and approved invoices, a production-based method Defendants also used for other Field Installation Workers.

76. Under the production-based system, Defendants did not reliably disclose or credit all compensable production or footage, and Plaintiff sometimes received less than the expected daily or weekly amount for full days and workweeks. On information and belief, the same calculation and disclosure practices applied to other Field Installation Workers paid by production or footage.

14

77. Plaintiff also received a Utilities One agreement stating an hourly rate of $47.72, but Defendants paid him under daily, weekly, and production-based arrangements and did not calculate overtime at one and one-half times the stated rate. The conflicting documents and payment methods exemplified Defendants' common classification and compensation practices.

78. Pay statements and other records for Plaintiff and other Field Installation Workers identified days worked or production units but did not record all hours worked and did not identify a separate overtime premium.

79. As with other Field Installation Workers, Plaintiff's day-rate, production-rate, and fixed-weekly compensation did not increase based on the number of hours worked over forty and was treated as straight-time compensation for all work performed.

<u>Unrecorded and Understated Compensable Work</u>

80. Defendants assign daily work through group messages and other communications that identify the Field Installation Workers, projects, locations, and tasks to be completed.

81. Defendants require Field Installation Workers to load materials and equipment, travel between company-controlled locations and assigned projects, remain at work until assigned tasks are completed, and perform reports and related administrative work after field operations end.

82. The time spent performing these preliminary, travel, field, and post-field tasks is work that Defendants suffer or permit and is predominantly for Defendants' benefit.

83. Defendants know when Field Installation Workers begin and end work because supervisors require workers to report to a yard or company housing, confirm attendance, distribute assignments, monitor project progress, require time-stamped photographs and daily reports, and direct travel and follow-up tasks.

84. Defendants nevertheless track primarily days worked and production totals rather than all hours worked each day and workweek.

85. Plaintiff estimates that Defendants failed to record or accurately compensate approximately ten hours of compensable time during a typical week, including loading, workday travel, after-field paperwork, utility-location requests, and engineering communications. Other Field Installation Workers performed the same or substantially similar tasks under the same timekeeping and compensation practices.

86. Separately, during the production-based period, Defendants omitted or understated work from Plaintiff's production calculations. On information and belief, Defendants used the same or substantially similar production-calculation practices for other Field Installation Workers paid by production or footage.

87. In workweeks in which Plaintiff and other Field Installation Workers worked more than forty hours, the unrecorded compensable time generated additional unpaid overtime compensation.

88. Defendants' assignments, messages, photographs, project reports, vehicle data, housing records, production sheets, pay statements, and deposit records can identify the frequency and extent of the unrecorded or understated work.

<u>Washington Public Works and Prevailing Wage Practices</u>

89. On information and belief, one or more Utilities One utility, telecommunications, or fiber-optic projects in Washington were undertaken pursuant to contracts involving the State of Washington, a county, city, municipality, public utility district, political subdivision, or other public agency, were executed in whole or in part at public expense, and constituted public works within the meaning of Wash. Rev. Code §§ 39.04.010(5), 39.12.020.

90. On information and belief, on those covered projects, Defendants performed or contracted to perform construction, reconstruction, maintenance, repair, or improvement work as contractors, subcontractors, lower-tier subcontractors, and/or employers within the meaning of Wash. Rev. Code ch. 39.12.

91. On information and belief, Plaintiff and the Washington Public Works Class Members performed manual construction and installation labor on the covered public works projects. That work included: loading and moving materials and equipment; operating or assisting with vehicles and equipment; installing aerial or underground telecommunications cable, conduit, and fiber-optic infrastructure; working on or around utility poles; digging and backfilling; establishing traffic control; testing and documenting installations; and performing related field work.

92. On information and belief, Plaintiff and the Washington Public Works Class Members were laborers, workers, or mechanics entitled to prevailing wages under Wash. Rev. Code ch. 39.12.

93. The applicable prevailing-wage classifications are determined by the actual scopes of work performed rather than the job titles, contractual labels, or tax classifications Defendants assigned to the workers.

94. Depending upon the work performed, the applicable classifications included outside telephone line construction, telecommunication technicians, laborers, equipment operators, power line construction electricians, and/or other classifications established by the Washington Department of Labor and Industries.

95. The applicable prevailing rates were the rates established for the relevant trades or occupations, counties, project bid dates or contract dates, and scopes of work, together with required usual benefits and applicable prevailing overtime premiums.

96. Defendants were required to pay Plaintiff and the Washington Public Works Class Members not less than the applicable prevailing rate for every hour of covered work performed on the public works projects.

97. Because Defendants paid workers through daily, job, piece, production, footage, and fixed-weekly compensation, the hourly rate for prevailing-wage purposes was required to be mathematically determined from the compensation paid and the number of hours worked during the applicable period.

98. Defendants' designation of Plaintiff and other workers as independent contractors or Form 1099 recipients did not remove them from prevailing-wage coverage because the workers were subject to Defendants' direction and control, performed work within Defendants' usual construction business, did not operate independently established businesses, and did not otherwise satisfy the requirements of Wash. Rev. Code § 39.12.100.

99. Defendants knew or should have known whether the covered projects required prevailing wages because the public contracts, bid specifications, project documents, statements of intent to pay prevailing wages, certified payroll requirements, and applicable wage schedules identified those obligations.

100. The presence of government or project inspectors at Utilities One work sites, the foreman's repeated instruction that workers identify themselves to inspectors as W-2 employees paid approximately $45 per hour, and the written agreement stating an hourly rate of $47.72 further support the inference that the covered projects were public works subject to prevailing-wage requirements and that Defendants were aware of the wage and classification requirements applicable to those projects.

101. On information and belief, Defendants nevertheless paid Plaintiff and the Washington Public Works Class Members daily, production, footage, and fixed-weekly amounts that, when converted to hourly compensation, were less than the applicable prevailing wages, usual benefits, and overtime premiums required for the work performed.

102. Defendants did not identify on pay statements the applicable public-works classifications, all hours worked, hourly prevailing rates, usual-benefit credits, or prevailing overtime premiums.

103. Defendants maintained or had access to project, contracting, assignment, payroll, and compensation records identifying the projects on which Plaintiff and the Washington Public Works Class Members worked and the compensation paid for that work.

104. On information and belief, Defendants' common practice of treating covered public-works labor as day-rate, production-rate, footage-rate, fixed-weekly, and/or independent-contractor work deprived Plaintiff and the Washington Public Works Class Members of prevailing wages required by Washington law.

### Defendants' Knowledge, Records, and Willfulness

105. Defendants had actual or constructive knowledge of the hours worked because their managers and foremen assigned daily work, confirmed attendance, supervised the projects, monitored production, required reports and photographs, and directed travel between projects.

106. Defendants knew that utility and fiber installation workers commonly worked five to seven days per week, from morning until sunset or later, and therefore worked more than forty hours during at least some workweeks.

107. Defendants knew that their pay statements recorded daily or production amounts without recording all hours worked and without identifying any separate overtime premium.

108. Defendants knew the amounts transmitted through each payment channel because Utilities One accounting issued the pay statements and supplemental electronic payments, while a nonparty payment intermediary transmitted some direct deposits.

109. Defendants used documents identifying Field Installation Workers as W-2 employees paid hourly while also using Form 1099 or independent-contractor documents for the same work. Plaintiff was required to sign both types of documents.

110. A foreman supervising Plaintiff's Utilities One project repeatedly instructed Plaintiff and other workers to tell government or project inspectors that they were W-2 employees paid approximately $45 per hour rather than independent contractors paid a daily rate.

111. The foreman transmitted a voice message repeating that instruction and sent an image identifying the approximate $45 hourly rate, while Plaintiff's Utilities One agreement stated an hourly rate of $47.72.

112. Plaintiff complained in writing about compensation that did not correspond to the days and work performed and requested an explanation of Defendants' calculations.

113. Other utility and fiber installation workers regularly complained among themselves and to supervisors about low or withheld compensation and the absence of overtime pay.

114. Defendants possessed employment agreements expressly identifying hourly wages and were aware of the legal distinction between hourly employees and independent contractors, yet continued to pay fixed daily or production amounts without overtime.

115. Defendants failed to make, keep, and preserve accurate records of all hours worked by Plaintiff and other utility and fiber installation workers.

116. Defendants' violations were willful because Defendants knew or showed reckless disregard for whether their classification, timekeeping, daily-rate, production-rate, payroll, and

compensation practices failed to pay utility and fiber installation workers the overtime and other wages required by law.

## COLLECTIVE ACTION ALLEGATIONS

117. Plaintiff brings Count I as a collective action under 29 U.S.C. § 216(b) on behalf of himself and the Nationwide Collective.

118. The Nationwide Collective is defined as:

> *All Field Installation Workers who worked for one or both Defendants in the United States, were paid, in whole or in part, on a day-rate, job-rate, piece-rate, production-rate, footage-rate, or fixed-weekly basis, and worked more than forty hours during at least one workweek at any time from three years before the filing of this action through final judgment.*

119. Plaintiff and the Nationwide Collective Members are similarly situated because they share the following characteristics: the same or substantially similar utility, telecommunications, or fiber-optic field-installation positions; core manual duties; Utilities One projects and assignments; independent-contractor or inconsistent W-2 and Form 1099 classifications; day-rate, production-based, or fixed-weekly compensation methods; centralized payroll administration; and absence of a separately calculated overtime premium.

120. Questions of law and fact common to Plaintiff and the Nationwide Collective include: whether the workers were employees notwithstanding Defendants' labels or tax treatment; whether the Utilities One entities jointly employed the workers; whether day-rate, job-rate, piece-rate, production-rate, footage-rate, and fixed-weekly payments constituted straight-time compensation; whether Defendants were required to calculate a regular rate and pay an additional overtime premium; whether Defendants failed to record all hours worked; whether Defendants' practices resulted in unpaid overtime; and whether Defendants acted willfully.

121. Defendants' liability can be established through common evidence, including standardized onboarding and classification documents, job descriptions, contracts, project assignments, schedules, group communications, daily reports, production records, pay statements, deposit records, electronic-transfer records, accounting records, and representative testimony.

122. Plaintiff's claims are similar to those of the Nationwide Collective because he held an included field position, performed the same core manual duties, was subjected to inconsistent employee and independent-contractor documentation, was paid through included compensation methods, regularly worked over forty hours, and received no separately calculated overtime premium.

123. The Nationwide Collective is identifiable from objective employer, job-title, pay-method, geographic, and temporal criteria contained in Defendants' records. The amount of compensation owed may be determined through payroll, project, assignment, production, payment, and representative evidence.

124. The names, addresses, telephone numbers, email addresses, employment dates, positions, classifications, and compensation records of the Nationwide Collective Members are available from Defendants' records, and notice should be issued to permit them to file written consents to join this action.

125. The limitations period is governed by 29 U.S.C. § 255(a), and the commencement date for each person who opts into this action is governed by 29 U.S.C. § 256. Plaintiff reserves the right to seek equitable tolling to the extent authorized by law based on Defendants' failure to maintain accurate records and use of inconsistent classification documents.

22

## RULE 23 CLASS ACTION ALLEGATIONS

126. Plaintiff brings Count II and the overtime portion of Count III under Fed. R. Civ. P. 23(a), (b)(3) on behalf of himself and the Washington Overtime Class. Plaintiff brings Count IV and the prevailing-wage portion of Count III under Fed. R. Civ. P. 23(a), (b)(3) on behalf of himself and the Washington Public Works Class.

127. The Washington Overtime Class is defined as:

> *All Field Installation Workers who worked for one or both Defendants in Washington, were paid, in whole or in part, on a day-rate, job-rate, piece-rate, production-rate, footage-rate, or fixed-weekly basis, and worked more than forty hours during at least one workweek at any time from three years before the filing of this action through final judgment.*

128. The Washington Public Works Class is defined as:

> *All Field Installation Workers who worked for one or both Defendants on a Washington public works project subject to Wash. Rev. Code ch. 39.12 at any time from three years before the filing of this action through final judgment.*

129. The Washington Overtime Class and Washington Public Works Class are ascertainable from objective criteria contained in Defendants' payroll, personnel, contracting, job-title, work-location, project-roster, assignment, public-contract, certified-payroll, and employment-date records.

130. The Washington Overtime Class Members are sufficiently numerous that joinder is impracticable. Plaintiff worked with approximately eight to ten workers in his primary crew, knew of another approximately ten-person crew in the same Washington market, and knew of additional crews and worker turnover at Utilities One projects in Ellensburg, Spokane, Centralia, Selah, and other Washington locations. Defendants' group messages, project rosters, payroll records, housing records, assignment records, and employment records identify additional members. On

23

information and belief, the Washington Public Works Class is also sufficiently numerous because Defendants staffed covered Washington public works projects with multiple crews and experienced worker turnover during the relevant period. On information and belief, each Class exceeds forty members. The precise number of members of both Classes is within Defendants' possession and control.

131. Questions of law and fact common to the Washington Overtime Class include: whether the workers were employees under Washington law; whether Defendants jointly employed them; whether day-rate, job-rate, piece-rate, production-rate, and fixed-weekly payments included only straight-time compensation; whether Defendants failed to calculate the regular rate and pay one and one-half times that rate for hours over forty; whether Defendants failed to record all compensable work; whether Defendants willfully withheld overtime wages; and the appropriate measure of class-wide relief. Questions common to the Washington Public Works Class include: whether the identified Washington projects constituted public works; whether Washington Public Works Class Members were laborers, workers, or mechanics under Wash. Rev. Code ch. 39.12; the applicable prevailing-wage classifications, usual benefits, and rates; whether Defendants' independent-contractor classifications satisfied Wash. Rev. Code § 39.12.100; whether Defendants willfully withheld prevailing wages; and the appropriate measure of public-works-class-wide relief.

132. Plaintiff's claims are typical of the claims of the Washington Overtime Class and Washington Public Works Class because he performed an included job in Washington, performed manual utility and fiber installation work on Utilities One projects, was subjected to the same material classification, scheduling, assignment, supervision, payroll, and compensation practices,

regularly worked over forty hours, and was denied overtime wages and, to the extent those projects were covered public works, applicable prevailing wages.

133. Plaintiff will fairly and adequately protect the interests of the Washington Overtime Class and Washington Public Works Class. Plaintiff has no interests antagonistic to either Class and has retained counsel experienced in wage-and-hour and complex employment litigation.

134. Common questions predominate over individualized questions because liability turns principally on Defendants' standardized job requirements, common contracting and classification documents, employer-controlled assignments, day-rate and production-based compensation methods, payroll practices, failure to record hours or pay a separate overtime premium, the public nature and governing contracts of the covered projects, applicable Department of Labor and Industries wage schedules, and Defendants' project and certified-payroll records.

135. The Washington Overtime Class and Washington Public Works Class actions are superior to individual actions because the individual wage losses may be too small to justify separate litigation, common adjudication will conserve judicial and party resources, and class treatment will provide consistent resolution of the common issues.

136. The prosecution of separate actions would create a risk of inconsistent adjudications and would impose duplicative burdens on the parties and the Court.

137. Plaintiff seeks certification of the Washington Overtime Class and Washington Public Works Class, appointment as representative of both Classes, and appointment of his counsel as class counsel.

## COUNT I

**Violation of the Fair Labor Standards Act**
**29 U.S.C. § 201 *et seq.***
**Failure to Pay Overtime Compensation**

138. Plaintiff realleges and incorporates all preceding paragraphs as though fully set forth herein.

139. Plaintiff brings this count individually and on behalf of the Nationwide Collective.

140. Plaintiff and the Nationwide Collective Members, including workers Defendants classified as independent contractors or whose compensation Defendants reported on Forms 1099, are or were employees covered by the FLSA, and Defendants are or were their joint employers within the meaning of the FLSA.

141. Under 29 U.S.C. § 207(a)(1), Defendants were required to pay Plaintiff and the Nationwide Collective Members one and one-half times their regular rates for all hours worked over forty in a workweek.

142. Under 29 C.F.R. § 778.112, when an employee is paid a day rate or job rate and receives no other compensation for services, the regular rate is determined by dividing total day-rate or job-rate compensation by total hours worked, and the employee is entitled to an additional one-half of the regular rate for each hour worked over forty.

143. Under 29 C.F.R. § 778.111, a worker paid by piece, production, or footage is entitled, at minimum, to an additional one-half of the regular rate for each hour worked over forty when the piece-rate earnings compensate all straight-time hours.

144. Under 29 U.S.C. § 203(d), (e), and (g), the FLSA broadly defines "employer," "employee," and "employ." Under 29 C.F.R. §§ 785.11–.13, work that an employer suffers or

26

permits is compensable. Employee status depends upon the economic reality of the relationship rather than contractual labels or tax forms.

145. Defendants employed Plaintiff and the Nationwide Collective Members for more than forty hours in one or more workweeks but paid only day rates, job rates, piece rates, production rates, fixed weekly amounts, and other straight-time compensation without the additional overtime premium required by the FLSA.

146. Defendants also failed to include all compensable loading, travel, field, reporting, and post-field work in the hours used to calculate overtime compensation.

147. Defendants' violations were willful within the meaning of 29 U.S.C. § 255(a).

148. Under 29 U.S.C. § 216(b), Plaintiff and the Nationwide Collective Members are entitled to unpaid overtime compensation, an equal amount as liquidated damages, reasonable attorneys' fees and costs, and all other relief authorized by law.

### COUNT II

**Violation of the Washington Minimum Wage Act**
**Wash. Rev. Code § 49.46.005 *et seq.***
**Failure to Pay Overtime Compensation**

149. Plaintiff realleges and incorporates all preceding paragraphs as though fully set forth herein.

150. Plaintiff brings this count individually and on behalf of the Washington Overtime Class.

151. Plaintiff and the Washington Overtime Class Members, including workers Defendants classified as independent contractors or whose compensation Defendants reported on Forms 1099, are or were employees covered by the WMWA, and Defendants are or were their joint employers within the meaning of the WMWA.

152. Under Wash. Rev. Code § 49.46.130(1), Defendants were required to pay Plaintiff and the Washington Overtime Class Members one and one-half times their regular rates for all hours worked over forty in a workweek.

153. Under Wash. Admin. Code § 296-128-550, employees paid on a salary, commission, piece-rate, percentage, or other nonhourly basis are entitled to overtime, and the regular rate may be determined by dividing weekly compensation by total weekly hours.

154. Defendants employed Plaintiff and the Washington Overtime Class Members for more than forty hours in one or more workweeks but paid only day rates, job rates, piece rates, production rates, fixed weekly amounts, and other straight-time compensation without paying one and one-half times the regular rate required by Washington law.

155. Defendants also failed to include all compensable loading, travel, field, reporting, and post-field work in the hours used to calculate Washington overtime compensation.

156. Under Wash. Rev. Code § 49.46.090, Plaintiff and the Washington Overtime Class Members are entitled to recover the full amount of wages due, reasonable attorneys' fees and costs, and all other relief authorized by law, without duplicative recovery.

### COUNT III

**Violation of Washington Wage-Withholding Law**
**Wash. Rev. Code §§ 49.52.050, .070**
**Willful Withholding of Wages**

157. Plaintiff realleges and incorporates all preceding paragraphs as though fully set forth herein.

158. Plaintiff brings this count individually, on behalf of the Washington Overtime Class as to unpaid overtime wages, and on behalf of the Washington Public Works Class as to unpaid prevailing wages, usual benefits, and prevailing overtime premiums.

28

159. Defendants were obligated to pay the following wages: overtime compensation to Plaintiff and the Washington Overtime Class Members under the WMWA; prevailing wages, usual benefits, and applicable prevailing overtime premiums to Plaintiff and the Washington Public Works Class Members under Wash. Rev. Code ch. 39.12; and, as to Plaintiff individually, unpaid straight-time compensation for compensable work, understated production compensation, and compensation promised under Defendants' written compensation documents, regular pay practices, and the parties' compensation arrangements.

160. Under Wash. Rev. Code § 49.52.050(2), an employer or officer, vice principal, or agent of an employer may not willfully and with intent to deprive an employee of wages pay a lower wage than the employer is obligated to pay by statute, ordinance, or contract.

161. Defendants willfully withheld wages by: knowingly paying fixed daily, production, and weekly amounts without the overtime premium required by Washington law to Plaintiff and the Washington Overtime Class Members; paying Plaintiff and the Washington Public Works Class Members less than the prevailing wages, usual benefits, and prevailing overtime premiums required on Washington public works projects; and, as to Plaintiff individually, failing to pay all straight-time, production-based, and promised compensation due.

162. Each Defendant participated in or exercised control over the classification, assignment, supervision, calculation, administration, transmission, or recording of the compensation withheld from Plaintiff and the members of the Washington Overtime Class and the Washington Public Works Class, as applicable.

163. Plaintiff and the members of the Washington Overtime Class and the Washington Public Works Class did not knowingly submit to Defendants' withholding of overtime, prevailing wages, or other earned wages, as applicable.

164. Under Wash. Rev. Code § 49.52.070, Plaintiff and the members of the Washington Overtime Class and the Washington Public Works Class are entitled to judgment for twice the amount of wages unlawfully withheld from each, together with reasonable attorneys' fees and costs, without duplicative recovery.

## COUNT IV

**Violation of the Washington Prevailing Wage Act**
**Wash. Rev. Code ch. 39.12**
**Failure to Pay Prevailing Wages**

165. Plaintiff realleges and incorporates all preceding paragraphs as though fully set forth herein.

166. Plaintiff brings this count individually and on behalf of the Washington Public Works Class.

167. On information and belief, Defendants were contractors, subcontractors, and/or other employers performing or contracting to perform all or part of public works projects within the meaning of Wash. Rev. Code §§ 39.04.010(5), 39.12.020.

168. Plaintiff and the Washington Public Works Class Members were laborers, workers, or mechanics who performed construction, installation, maintenance, repair, and improvement work on those public works projects.

169. Plaintiff and the Washington Public Works Class Members were not bona fide independent contractors under Wash. Rev. Code § 39.12.100 and remained entitled to the protections of Wash. Rev. Code ch. 39.12 regardless of any independent-contractor agreement, Form 1099 treatment, or other contrary label.

170. Under Wash. Rev. Code § 39.12.020, Defendants were required to pay Plaintiff and the Washington Public Works Class Members not less than the prevailing rate of wage for an hour's work in the same trade or occupation in the locality where the labor was performed.

171. Under Wash. Rev. Code § 39.12.010(1), the prevailing rate includes the applicable hourly wage, usual benefits, and overtime for the relevant classification, locality, and public works contract.

172. Under Wash. Rev. Code § 39.12.010(1), where Defendants paid compensation based on a day, job, piece, production unit, footage amount, week, or other period instead of an hour, the hourly rate was required to be mathematically determined from the number of hours worked during that period.

173. Under Wash. Admin. Code § 296-127-013(3), the applicable classifications were determined by the actual scopes of work performed by Plaintiff and the Washington Public Works Class Members rather than their job titles, contractual designations, or tax treatment.

174. On information and belief, Defendants paid Plaintiff and the Washington Public Works Class Members less than the applicable prevailing wages by paying fixed daily, job, piece, production, footage, and weekly amounts that, when converted to hourly compensation, were below the required prevailing rates.

175. Defendants also failed to pay all required usual benefits and prevailing overtime premiums and failed to credit only qualifying benefits against the prevailing-wage obligations.

176. On information and belief, Defendants' failure to pay the required prevailing wages was part of their common classification, payroll, and compensation practices for utility and fiber installation workers performing covered work on Washington public works projects.

177. Wash. Rev. Code § 39.12.065 authorizes Plaintiff and the Washington Public Works Class Members to pursue a private right of action against contractors and subcontractors for unpaid prevailing wages, and provides that the statutory remedy is not exclusive and is concurrent with other remedies provided by law.

178. Plaintiff and the Washington Public Works Class Members are entitled to recover the difference between the compensation Defendants paid and all prevailing wages, usual benefits, and applicable overtime premiums Defendants were required to pay, together with pre-judgment interest and all other relief authorized by law.

179. To the extent Defendants willfully paid Plaintiff and the Washington Public Works Class Members less than the prevailing wages required by statute or contract, those unpaid prevailing wages are also subject to the remedies requested in Count III under Wash. Rev. Code §§ 49.52.050, .070, without duplicative recovery.

## COUNT V

**Breach of Contract**
**Washington Common Law**
**Failure to Pay Promised Compensation**

180. Plaintiff realleges and incorporates all preceding paragraphs as though fully set forth herein.

181. Plaintiff brings this count individually and, to the extent it proceeds under theories inconsistent with his statutory claims, pleads it in the alternative under Fed. R. Civ. P. 8(d).

182. Utilities One Construction Inc. executed a written employment agreement with Plaintiff that identified it as his employer, classified him as a general laborer, and promised an hourly wage of $47.72. On information and belief, Utilities One, Inc. drafted, adopted, ratified, administered, and/or benefited from that agreement and is bound by it as Plaintiff's joint employer.

183. Plaintiff accepted and performed under the agreement by performing the utility and fiber installation work Defendants assigned and satisfied all conditions required of him.

184. Defendants materially breached the agreement by failing to pay Plaintiff $47.72 for each hour worked, instead paying lesser daily, production-based, and weekly amounts that did not equal the promised hourly compensation for all hours worked.

185. Plaintiff is entitled to recover the difference between the compensation promised under the agreement and the compensation Defendants paid, together with pre-judgment interest. The promised compensation also constitutes wages Defendants were obligated to pay by contract within the meaning of Wash. Rev. Code § 49.52.050(2) and is subject to the remedies requested in Count III, without duplicative recovery.

## COUNT VI

**Violation of the Washington Minimum Wage Act**
**Wash. Rev. Code §§ 49.46.020, .090**
**Failure to Pay Minimum Wages (In the Alternative)**

186. Plaintiff realleges and incorporates all preceding paragraphs as though fully set forth herein.

187. Plaintiff brings this count individually and on behalf of the Washington Overtime Class, in the alternative and without duplicative recovery.

188. Under Wash. Rev. Code § 49.46.020, Defendants were required to pay Plaintiff and the Washington Overtime Class Members not less than the applicable Washington minimum hourly wage for each hour worked.

189. In workweeks in which the fixed daily, job, piece, production, footage, or weekly compensation Defendants paid, divided by all hours actually worked, including the unrecorded compensable hours described above, fell below the applicable minimum wage, Defendants failed

to pay the minimum wage required by Washington law. For example, a \$150 to \$200 day rate for workdays extending from morning through sunset or later yields effective hourly rates at or below the Washington minimum wage in effect during the relevant period.

190. Under Wash. Rev. Code § 49.46.090, Plaintiff and the Washington Overtime Class Members are entitled to recover the full amount of unpaid wages, reasonable attorneys' fees, and costs, without duplicative recovery.

## COUNT VII

**Violation of Washington Wage-Payment Law**
**Wash. Rev. Code §§ 49.48.010, .030**
**Failure to Pay Wages Due at End of Employment**

191. Plaintiff realleges and incorporates all preceding paragraphs as though fully set forth herein.

192. Plaintiff brings this count individually and on behalf of the members of the Washington Overtime Class and the Washington Public Works Class whose work for Defendants has ended.

193. Under Wash. Rev. Code § 49.48.010, when an employee ceases to work for an employer, the wages due on account of the employment must be paid at the end of the established pay period, and an employer may not withhold or divert any portion of an employee's wages except as permitted by law.

194. Plaintiff's work for Defendants ended in approximately June 2026. Defendants did not pay Plaintiff, or other separated members of the Washington Overtime Class and the Washington Public Works Class, all overtime, minimum-wage, straight-time, production-based, promised, and prevailing wages due at the end of the established pay period, and those wages remain unpaid.

195. Under Wash. Rev. Code § 49.48.030, Plaintiff and the separated members of the Washington Overtime Class and the Washington Public Works Class are entitled to reasonable

34

attorneys' fees and costs in any action in which they recover a judgment for wages or salary owed, in addition to the wages recovered, without duplicative recovery.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Nationwide Collective, Washington Overtime Class, and Washington Public Works Class, respectfully requests that the Court:

A. Designate this action as an FLSA collective action under 29 U.S.C. § 216(b);

B. Authorize notice to members of the Nationwide Collective and permit them to join by filing written consents with the Court;

C. Certify the Washington Overtime Class and Washington Public Works Class under Fed. R. Civ. P. 23(a), (b)(3);

D. Permit Plaintiff to proceed as the representative plaintiff for the Nationwide Collective;

E. Appoint Plaintiff as the representative of the Washington Overtime Class and Washington Public Works Class;

F. Appoint Plaintiff's counsel as counsel for the Nationwide Collective, Washington Overtime Class, and Washington Public Works Class;

G. Declare that Defendants violated the FLSA, WMWA, Wash. Rev. Code ch. 39.12, Wash. Rev. Code §§ 49.52.050, .070, Wash. Rev. Code § 49.46.020, and Wash. Rev. Code § 49.48.010, and breached Plaintiff's written compensation agreement;

H. Award Plaintiff and the Nationwide Collective all unpaid overtime compensation proven at trial;

I. Award Plaintiff and the Washington Overtime Class all unpaid overtime compensation under Washington law and award Plaintiff individually all unpaid straight-time compensation for

35

compensable work, understated production compensation, and compensation promised under written agreements and regular pay practices proven at trial;

J. Award Plaintiff and the Washington Public Works Class all unpaid prevailing wages, usual benefits, and applicable prevailing overtime premiums proven at trial;

K. Award liquidated damages under the FLSA to the extent authorized by 29 U.S.C. § 216(b);

L. Award Plaintiff and the members of the Washington Overtime Class and the Washington Public Works Class twice the wages unlawfully withheld from each, as applicable, together with all other relief authorized by Wash. Rev. Code § 49.52.070, without duplicative recovery;

M. Award reasonable attorneys' fees and costs under the FLSA and Washington law;

N. Award pre-judgment and post-judgment interest to the extent permitted by law;

O. Award all other relief authorized by Wash. Rev. Code ch. 39.12 and applicable Washington law;

P. Award Plaintiff damages for breach of his written compensation agreement in the amount of the compensation promised but not paid, together with pre-judgment interest;

Q. Award Plaintiff and the Washington Overtime Class all unpaid minimum wages under Wash. Rev. Code §§ 49.46.020, .090, award Plaintiff and all separated Class Members their unpaid final wages under Wash. Rev. Code § 49.48.010, and award reasonable attorneys' fees and costs under Wash. Rev. Code §§ 49.46.090, 49.48.030, without duplicative recovery; and

R. Grant such other and further relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to the Seventh Amendment to the United States Constitution and Fed. R. Civ. P. 38, 39, Plaintiff demands a trial by jury on all issues so triable, individually, on behalf of the

Nationwide Collective under 29 U.S.C. § 216(b), and on behalf of the putative Washington

Overtime Class and Washington Public Works Class under Fed. R. Civ. P. 23.

Respectfully submitted,

Dated: August 11, 2026                                    **BROWN, LLC**

*/s/ Achchana Ranasinghe*
Achchana Ranasinghe (087282014)
Nicholas Conlon (034052013)
111 Town Square Place, Suite 400
Jersey City, NJ 07310
T: (877) 561-0000 | F: (855) 582-5297
ac@jtblawgroup.com
nicholasconlon@jtblawgroup.com

*Attorneys for Plaintiff*

37